```
IN THE UNITED STATES DISTRICT COURT
 FOR THE EASTERN DISTRICT OF VIRGINIA
```

**Alexandria Division**

| | |
|---|---|
| P5 SOLUTIONS, INC., | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No. 1:18-cv-1380 |
| CHRISTOPHER STEINKE | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiff and Defendant's Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Plaintiff P5 Solutions, Inc. ("P5") is a Virginia business that supports information technology services and provides support for customers that utilize the "ServiceNow Performance Analytics" platform. Defendant Christopher Steinke was a part-time P5 employee from approximately June 2016 until January 8, 2018, when he was offered and accepted full-time employment with P5.

On the commencement of his full-time employment on January 15, 2018, Steinke and P5 executed an "At Will Employment Agreement" (the "Employment Contract"). Steinke's new title was "Director of Performance and Transformation," and his duties generally included working on client projects and marketing P5's business. Throughout

Steinke's employment, Steinke periodically copied his P5 work e-mails and their attachments to his personal Dropbox account. In total, Steinke copied approximately 22,000 electronic documents. Steinke contends that he stored his company e-mails on his cloud-based Dropbox account because it allowed him to collaborate with his coworkers and because it would serve as a back-up in the event of loss or damage to his work computer. The approximately 22,000 documents retained by Steinke contained a variety of P5 business information, including client pricing information, client presentation materials, and "rate cards" breaking down P5's rates based on services provided.

Steinke was terminated by P5 on April 17, 2018. When Steinke was terminated, he returned his work laptop but did not return any of the approximately 22,000 copied documents. On May 1, 2018, following his termination, Steinke's counsel sent P5 a letter alleging that P5 failed to pay certain wages and compensation owed to Steinke. In the May 1, 2018 letter Steinke made references to some of the copied documents, but P5 did not request that he return any of those referenced documents in response to his letter.

On June 21, 2018, Steinke filed suit in the Superior Court for the District of Columbia alleging that P5 failed to pay him certain wages and compensation (the "DC Litigation"). Steinke produced many of the copied documents in the DC Litigation, and P5 has paid significant legal fees defending that matter.

As relevant to the present motions, the Employment Contract contains provisions requiring the return company property upon termination (paragraph four), that Steinke refrain from disclosing confidential company information (paragraph five), and a damages clause (paragraph seven). Paragraph four of the Employment Contract states that, upon termination, "[Steinke] will immediately deliver to Employer all data, manuals, specifications, lists, notes, writings, customer and product lists, photocopies, microfilm, tape recordings, computer disks, patterns, art work, and all other documents or tangible materials whatsoever, including all copies or duplicates, concerning any part of Employer's activities or concerning any part of [Steinke's] activities as an employee."

Paragraph five of the Employment Contract, "Confidentiality," forbids Steinke from using, publishing, disclosing, appropriating or communicating, directly or indirectly, any marketing, sales, service, costs, business method, formula, product specifications, planning, engineering, technical information relating to P5, as well as any customer lists and/or any other information "which could give any third party an opportunity to obtain advantage over competitors who did not know such information[.]"

Paragraph seven of the Employment Contract states that if Steinke breaches paragraphs three, four, five, or six of the Employment Contract and "[P]5 determines that actual damages

3

resulting from [Steinke]'s violation cannot reasonably be ascertained, [P5] may elect, at its sole discretion, to recover liquidated damages in the amount of $100,000 plus court costs, litigation expenses, and actual and reasonable attorneys' fees."

In its amended complaint, P5 alleges one count of breach of the Employment Contract. In support of its motion for summary judgment, P5 argues that Steinke's retention of the approximately 22,000 documents breached paragraphs four and five of the Employment Contract. Relying on paragraph seven of the Employment Contract, P5 seeks $100,000 in damages and the return of the documents. In support of Steinke's motion for summary judgment, Steinke argues that he did not breach the Employment Contract and that even if he did, P5 has not suffered any damage resulting from the breach.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See

4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). This Court finds this case is ripe for summary judgment.

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). As with any cause of action, damage to a plaintiff is an essential element and "[i]n the absence of injury or damage to a plaintiff or his property, he has no cause of action and no right of action can accrue to him." Fried v. Smith, 421 S.E.2d 437, 439 (Va. 1992); Sunrise Continuing Care, LLC v. Wright, 671 S.E.2d 132, 136 (Va. 2009) ("Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim.").

P5 first argues that Steinke had a legally enforceable obligation to return the approximately 22,000 documents upon termination of his employment with P5. The Court agrees. Paragraph four of the Employment Contract makes clear that Steinke must, upon termination, "immediately deliver to [P5] all data . . . including copies or duplicates, concerning any part of [P5's] activities or concerning any part of [Steinke's] activities as an employee." There is no genuine dispute of fact that the

5

approximately 22,000 documents retained by Steinke belong or otherwise "concern" P5's activities as an employer of Steinke.

Next, P5 argues that Steinke has materially breached paragraph four by failing to return the approximately 22,000 documents when he was terminated on April 17, 2018. In response, Steinke argues that the issue of whether he breached paragraph four depends on whether it required Steinke to "do something more than simply ensure that P5 was in possession of all documents in his personal Dropbox such that P5 would not be deprived of the use of such documents." Contending that paragraph four does not require Steinke to do anything beyond ensure that P5 had access to the original copies of the electronic documents, Steinke argues that he was not required to return their copies. Conspicuously absent from Steinke's argument is any recognition that paragraph four explicitly requires Steinke to return "all copies or duplicates" of documents belonging to P5, not simply ensure that P5 has access to the original copies of messages. Steinke's proffered reading of paragraph four would run afoul of established Virginia rules of contract interpretation. Brooks v. Bankson, 445 S.E.2d 473, 477 (Va. 1994) ("A contract must be construed as a whole to determine the parties' intent with respect to specific provisions."). To accept Steinke's argument would require that the Court add terms to the parties' agreement, which it may not do. Tm Delmarva Power v. Ncp of Va., 557 S.E.2d 199, 200 (Va. 2002). For purposes of

6

whether Steinke breached paragraph four, it is simply not relevant whether P5 has been deprived of the use of the documents.

Steinke next argues that, based on an isolated interpretation of the word "deliver" in paragraph four, that he only had to return property or documents that could be "physically transfered" back to P5. Again, however, the unambiguous language of paragraph four explicitly contemplates the return or delivery of "data" in addition to "all other documents or tangible property." In any event, the copies of electronic messages that Steinke has retained are indeed capable of physical delivery by hard disk or flash drive.

Steinke also cites to certain "extrinsic evidence" that he argues supports his interpretation of paragraph four. Steinke notes that his May 1, 2018 demand letter to P5 made multiple references to the fact that he was in possession of P5 documents, but in response, P5 did not immediately demand that he return them. Steinke also states that he produced many of the P5 documents in the DC Litigation on October 19, 2018, but that P5 did not "take any action" for his apparent breach of paragraph four. Steinke also argues that he was not informed to return the documents until P5 amended the current lawsuit on February 13, 2019, and that P5's corporate designee testified in his deposition that he was unsure what Steinke should have done to return the documents.

Steinke's "extrinsic evidence" argument is unavailing. To begin, Virginia law does not permit extrinsic evidence where it would be inconsistent with the express terms of the contract. Eure v. Norfolk Shipbuilding & Drydock Corp., 561 S.E.2d 663, 667 (Va. 2002) ("When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself."). The crux of Steinke's "extrinsic evidence" argument appears to be that P5 was required to demand that Steinke return the documents upon his termination. Again, however, the unambiguous text of the Employment Contract states that Steinke's obligation to return all company property was trigged "upon termination." Paragraph four makes no mention of any requirement that Steinke's obligation to return the documents were only triggered if he was asked to return company property.

P5's motion for summary judgment seeks an order compelling Steinke to return all P5 property in his possession and pay $100,000 in liquidated damages pursuant to paragraph seven. Because the parties do not dispute that Steinke has retained P5's company property, Steinke must return all documents to P5. However, because P5 has not made a showing that it has suffered any harm or damage beyond Steinke's retention of its property, P5 is not entitled to any monetary damages for Steinke's breach.

To be entitled to liquidated damages under paragraph seven, P5 must first show that it has been injured or damaged as a result

of Steinke's breach. P5 argues that it is not required to prove the existence of any actual damages because paragraph seven of the Employment Contract contains an enforceable liquidated damages provision. While it is true that an enforceable liquidated damages provision may obviate the need for a plaintiff to prove the precise amount of actual damage suffered, such a provision does not eliminate the well-settled requirement that a plaintiff first show that it was damaged by the defendant's breach. <u>Sunrise Continuing Care</u>, 671 S.E.2d at 136. Indeed, the text of paragraph seven of the Employment Contract states that P5 may rely on the damages provision only "in the event that . . . actual damages cannot be reasonably ascertained." Significantly, paragraph seven does not eliminate P5's obligation to prove actual damage. Instead, paragraph seven merely contemplates that where P5 cannot "reasonably ascertain" the extent of the damage resulting from Steinke's breach that it may elect to recover liquidated damages as agreed. Put another way, paragraph seven does not remove the requirement that P5 show that it was damaged by Steinke's breach before being entitled to recover under the liquidated damages provision. Instead, paragraph seven states that where P5 cannot determine the degree of its damage with reasonable certainty that it may rely on the provision. Accordingly, P5 must still show that it was damaged by Steinke's breach to recover the liquidated amount.

9

P5 argues that it was damaged by Steinke's breach in two ways. First, P5 argues that it was "plainly injurious" for a former employee to possess documents containing sensitive client information. It is undisputed, however, that P5 has no evidence that Steinke has done anything with those documents which caused it any injury or damage. P5 essentially argues that it has been damaged by the mere risk that a disgruntled ex-employee may use the information contained in the documents at some point in the future. Fundamentally, however, "risk" exists where there is an absence of harm. P5's argument that there is only a risk that Steinke may eventually use the documents in a way that may cause P5 injury necessarily means that P5 has not yet suffered any injury and damage. P5's argument would also require the Court to engage in speculation and conjecture, which is forbidden under Virginia law. See Hale v. Fawcett, 202 S.E.2d 923, 925 (Va. 1974) ("To recover damages in any case, a plaintiff must prove with reasonable certainty the amount of his damages and the cause from which they resulted. There can be no recovery [based on] speculation or conjecture"); Sunrise Continuing Care, 671 S.E.2d at 136 ("speculation and conjecture cannot form the basis of the recovery.").

P5 next argues that it has been damaged by being forced to spend significant sums to defend the DC Litigation, where Steinke has used some of the 22,000 documents to support his claims for

unpaid wages. But Steinke's claims in the DC Litigation relate to nonpayment of wages and commissions allegedly owed, and while some of the documents retained by Steinke may have been helpful in forming his original demand letter, any "injury" suffered from the DC Litigation did not result from Steinke's breach of contract. The documents relied on by Steinke were eventually produced in discovery in the DC Litigation in any event, and it is unclear to the Court why P5 believes that Steinke was only able to bring his lawsuit because he retained those documents. The Court is also reluctant to find that an employer could be "damaged" by a former employee that has used company documents for the sole purpose of seeking legal redress for unpaid wages from that employer. See e.g., Mansfield v. Bernabei, 727 S.E.2d 69, 75 (Va. 2012) (recognizing a "judicial privilege" against claims arising out "proceedings of a judicial nature") see also West v. Marjorie's Gifts, Inc., 529 F.2d 518 (4th Cir. 1975) (recognizing judicial privilege); Fletcher v. National bank of Commerce, 138 F.2d 742, (4th Cir. 1943) (same).

For the forgoing reasons, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part, and Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
October 23, 2019